No. 41,961

Lutie M. Davis and Ann Davis Marlow, *Appellees,* v. J. W. Plunkett, *Appellant.*

(353 P. 2d 514)

Opinion

filed July 2, 1960.

*Bradley Post,* of Meade, argued the cause and was on the brief for the appellant.

*E. Keith Beard,* of Meade, argued the cause, and *David J. Wilson,* of Meade, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: As between the parties to this appeal, this was an action to quiet title. The question presented involves the construction of a "Mining Lease" covering eighty acres of land in Meade county, which reads as follows:

"Belle Davis ⎫
To ⎬ Mining Lease
Volcanic Ash Company ⎭

"CONTRACT AND AGREEMENT, Made and entered into this 3rd day of May, 1926, by and between Belle Davis, a widow, of Meade County, Kansas, party of the first part and The Volcanic Ash Company of America, a Missouri corporation, party of the second part;

"WITNESSETH, That the party of the first part, for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, demise, lease and let unto the said party of the second part, their heirs, administrators and assigns, *for the sole purpose of mining and removing Volcanic Ash, and all other minerals or mineral derivatives* from the following described land situated in the County of Meade, State of Kansas, to-wit:

"The south one-half (½) of the southwest quarter (¼) of Section thirty-six (36), Township thirty (30) south of Range twenty-eight (28), Meade County, Kansas, comprising of eighty (80) acres, more or less.

"It is further agreed in order to give the parties of the second part *an outlet for the removal of the material and equipment,* that the party of the first part, for and in consideration of Ten Dollars ($10.00) cash in hand paid, and other valuable considerations do hereby grant and lease unto the parties of the second part, their heirs and assigns, *the right to build either a wagon road or spur track along the ravine, leading from the Cudahy Railway to the deposit,* across the following described property, the northeast quarter (NW [sic] ¼)

of Section two (2) Township thirty-one (31) south of Range twenty-eight (28), Meade County, Kansas.

"IN CONSIDERATION of the premises herein stipulated, the party of the second part has this day paid a total advance royalty the sum of Five Hundred Dollars ($500.00), and Two Hundred Fifty Dollars ($250.00) for the right of way.

"THIS INSTRUMENT, in consideration of the full advance royalty payment gives the parties of the second part, their heirs or assigns, for a period of ninety-nine years, without any further payment, the exclusive right *to operate, dig, mine and drill upon the land for Volcanic Ash, Gypsum and other minerals or mineral derivatives, and to remove same and erect machinery necessary for that purpose* and ingress, and egress and regress for such purposes for a period of ninety-nine years.

"Witness our hand this 17th day of May, 1926.

"Belle Davis
"The Volcanic Ash Company of
America (a Missouri Corporation)
J. H. Cowell, Vice-Pres. and Mngr."

(Emphasis supplied.)

The pleadings disclose that in 1927 The Volcanic Ash Company of America, lessee, assigned the lease to The Pumicite Company, which in turn, in 1949, assigned the lease to defendant Plunkett, appellant herein.

Plaintiff owners of the land contend the lease covers only volcanic ash and gypsum.

Defendant, assignee of the lease, contends the language "and all other minerals or mineral derivatives" contained in the lease includes oil and gas.

The trial court heard the case on the pleadings, briefs and argument of counsel, and held that the lease in question was intended to and does pertain *only* to volcanic ash and gypsum. From that judgment defendant assignee has appealed, and, while several matters pertaining to the pleadings are raised, actually the only question is whether this lease covers minerals other than volcanic ash and gypsum—that is—oil and gas.

We are cited to no authority specifically in point, but in the recent case of *In re Estate of Trester,* 172 Kan. 478, 241 P. 2d 475, a somewhat analogous question was involved. In that case an instrument entitled "Sale of Oil and Gas Royalty" conveyed an interest in and to "all of the oil, gas and other minerals in and under" the land in question, and it was later contended the language was broad enough to include a deposit of clay on the land. The trial court

held that the words "other minerals" did not include the clay, and in upholding that ruling this court said:

"In this court the argument of counsel for appellants runs as follows: Clay is a mineral, citing dictionary definitions; the instrument dated June 18, 1945, entitled 'Sale of Oil and Gas Royalty', conveys to the grantee certain interests in 'oil, gas and other minerals'; hence of necessity it includes clay. This conclusion is too broad. It is true that in classifying things as animal, vegetable and mineral, everything that goes to make up the earth comes within the general classification of minerals. But this general classification cannot be used for the interpretation of instruments granting specific rights. With respect to that matter the term 'mineral' is not a definite one capable of universal application. It is susceptible to limitations according to the intention of the parties using it, and in determining its meaning in a specific instrument not only the language of the instrument in which it occurs but also the relative positions of the parties interested and the substance of the transaction which the instrument embodies must be taken into account." (pp. 482, 483.)

In the case before us the instrument in question is denominated a "Mining Lease." The lessee therein was a volcanic ash company. Considering all parts of the lease it seems clear that its primary object was concerned with the mining and removal of volcanic ash and gypsum. That was the subject matter of the lease. It provided for a right of way leading to the "deposit," which is indicative of the fact the exact location of such deposit was known by the parties prior to the execution of the lease. Notwithstanding the fact the lease contains the words "and all other minerals or mineral derivatives," we think it is clear that the correct construction to be placed on this instrument is that the specific reference to volcanic ash and gypsum, and to a right of way to the "deposit," limits the lease to those minerals, and that the trial court was correct in so holding.

The judgment is affirmed.