325 F.2d 264
 Wanna E. BUMPUS, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 7348.
 United States Court of Appeals Tenth Circuit.
 Nov. 20, 1963.
 
 Phillip Mellor, Wichita, Kan., and George Forbes, Eureka, Kan. (T. C. Forbes, Harold Forbes, Dale L. Pohl, Eureka, Kan., John Jay Darrah and Charles A. Sparks, Jr., Wichita, Kan., on the brief), for appellant.
 Hugh Nugent, Atty., Dept. of Justice (Ramsey Clark, Asst. Atty. Gen., Newell A. George, U.S. Atty., Clarence J. Malone, Asst. U.S. Atty., and Roger P. Marquis, Atty., Dept. of Justice, on the brief), for appellee.
 Before MURRAH, Chief Judge, and PHILLIPS and PICKETT, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 In November, 1957, the United States commenced in the United States District Court for the District of Kansas a condemnation proceeding to acquire 150 acres of land situated in Greenwood County, Kansas, designated as Tract D-422, then owned by S. S. Bumpus and Wanna E. Bumpus, his wife, for use in the construction of the Toronto Dam and Reservoir Project on the Verdigris River for flood control and related purposes. The Declaration of Taking in part read:
 
 
 2
 '3. The estates taken for public uses are as follows:
 
 
 3
 '(a) As to Tracts Nos. * * * D-422, the fee simple title, subject, however, to existing easements for public roads and highways, public utilities, railroads and pipe lines, reserving to the owner or owners of the subsurface estate, or any interest therein, his or their heirs, administrators, executors, successors and assigns, all oil, gas and other minerals in and under said land, with full rights of ingress and egress for the purpose of exploration, development, production and removal of oil, gas and other minerals which may be produced from said land, * * *.'
 
 
 4
 The extreme elevation at which water in the reservoir could be impounded was set at 936 feet m.s.l. The issue of just compensation was tried to a Commission. The Commission determined that the highest and best use of Tract D-422 was for a livestock farm and general farming and fixed just compensation at $23,710. Thereafter, the District Court entered judgment awarding that amount to the owners of the tract and adjudging the title to the extent of the estate taken had vested in the United States. Thereafter, Wanna E. Bumpus, widow of S. S. Bumpus, deceased, and successor to his interests in the minerals reserved to the owners of the subsurface estate, claiming the right so to do, entered the land for the purpose of mining and removing gravel. The United States filed a motion for a writ of assistance, alleging that the reservation to the landowner was only oil, gas and other similar minerals. Wanna E. Bumpus responded that she had the right to remove the gravel, so long as she did it in a way that would not impair the operation of the reservoir. The witnesses who testified as to the value of the land before the Commission did not take into consideration the existence or extent of the contributory value of the gravel deposits on the land, although such deposits were visible at the surface of the land. On the issues thus joined, the District Court concluded that gravel was not a mineral reserved to the landowner and was so closely related to the surface that it should be considered a part of the surface estate. The court granted a writ of assistance and Wanna E. Bumpus has appealed.
 
 
 5
 Both parties agree that Federal law controls, since the condemnation was under Federal law, but neither side has cited any Federal decision closely in point. We must, therefore, determine the question presented by reference to the applicable principles of general law.
 
 
 6
 ' Mineral' is a word of general language, and not per se a term of art. It does not have a definite meaning.[1] It is used in many senses.[2] It is not capable of a definition of universal application, but is susceptible to limitation or expansion according to the intention with which it is used in the particular instrument or statute.[3] Regard must be had to the language of the instrument in which it occurs, the relative position of the parties interested and the substance of the transaction which the instrument embodies.[4] The word, if broadly construed, would include gravel.[5]
 
 
 7
 Since the language of the reservation was written by representatives of the United States, it was incumbent upon the United States, since it chose to take less than the entire estate, to describe the estate to be taken with such exactness and certainty that the landowner would know what was reserved to him.[6]
 
 
 8
 However, the landowners here did not in the condemnation proceedings raise any objection to the lack of specificity in the description of the estate reserved to them.
 
 
 9
 Since 'gravel' is a word of general meaning and not a term of art and is susceptible to limitation or expansion, according to the intention with which it is used in the particular instrument, we must look to the position of the parties, the substance of the transaction, and the context in which the word is found.
 
 
 10
 Here, it is apparent that the United States desired to obtain the surface rights for reservoir purposes. The reservation in terms is to the owner of the subsurface estate and the general word 'mineral' follows an enumeration of specific kinds of minerals. We are of the opinion that the case is peculiarly one for the application of the maxim ejusdem generis. Literally, that phrase means 'of the same kind or species.' It is a well known maxim of construction, sometimes called Lord Tenterden's Rule, to aid in ascertaining the meaning of statute or other written instrument, and, under the maxim, where an enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms.[7]
 
 
 11
 Since gravel is not of the same kind or species as oil or gas, the general word 'mineral' following that enumeration of specific minerals would not, under the rule of ejusdem generis, be construed to include gravel. Moreover, the gravel was found exposed at the surface of the land. It would be more reasonable to conclude that a reservation to the owners of the subsurface estate would be limited to minerals lying below the surface and not those exposed at the surface and lying near the surface of the land.
 
 
 12
 For the reasons indicated, we conclude that the trial court properly construed the phrase 'other minerals' and the judgment is accordingly affirmed.
 
 
 13
 MURRAH, Chief Judge (concurring specially).
 
 
 14
 I fully concur in the affirmance of the judgment of the trial Court. But I prefer to do so on the simple premise that the instrument of taking, by its plain terms, reserved only 'the subsurface estate, or any interest therein.' The trial Court has found that the gravel, which is the subject of this suit, was not a part of the subject estate, but of the surface soil. That finding is fully supported by the evidence and hence, we have no need to determine whether, as a part of the subsurface, the gravel would be classified as a mineral.
 
 
 
 [1]
 Highland v. Commonwealth of Pennsylvania, 400 Pa. 261, 161 A.2d 390, 398; Cole v. McDonald, 236 Miss. 168, 109 So.2d 628, 635; Kalberer v. Grassham, 282 Ky. 430, 138 S.W.2d 940, 942; 58 C.J.S. Mines and Minerals 2, p. 17; Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228, 231
 
 
 [2]
 Northern Pacific Railway v. Soderberg, 188 U.S. 526, 530, 23 S.Ct. 365, 47 L.Ed. 575; Highland v. Commonwealth of Pennsylvania, 400 Pa. 261, 161 A.2d 390, 398
 
 
 [3]
 Adams County v. Smith, 74 N.D. 621, 23 N.W.2d 873, 875; Puget Mill Co. v. Duecy, 1 Wash.2d 421, 96 P.2d 571, 574; Hans v. Great Bend Brick & Tile Co., 172 Kan. 478, 241 P.2d 475, 478
 
 
 [4]
 Hans v. Great Bend Brick & Tile Co., 172 Kan. 478, 241 P.2d 475, 478; Davis v. Plunkett, 187 Kan. 121, 353 P.2d 514, 516; Fleming Foundation v. Texaco, Tex.Civ.App., 337 S.W.2d 846, 851; Sellars v. Ohio Valley Trust Co., Ky., 248 S.W.2d 897, 898, 899
 
 
 [5]
 Puget Mill Co. v. Duecy, 1 Wash.2d 421, 96 P.2d 571, 573
 
 
 [6]
 Pontiac Improvement Co. v. Board of Com'rs, 104 Ohio St. 447, 135 N.E. 635, 640; Note, 23 A.L.R. 866; Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 603; Note, 145 A.L.R. 1343; Kamo Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W.2d 858, 864
 
 
 [7]
 Gooch v. United States, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 552; Cain v. Bowlby, 10 Cir., 114 F.2d 519, 522, c.d. 311 U.S. 710, 61 S.Ct. 319, 85 L.Ed. 462; Kronvall v. Garvey, 148 Kan. 802, 84 P.2d 858, 860; Parman v. Lemmon, 119 Kan. 323, 244 P. 227, 229, 44 A.L.R. 1500; 28 C.J.S. Ejusdem, p. 1049