BURLEIGH COUNTY WATER RESOURCE DISTRICT; United Sportsmen of North Dakota, Bismarck Chapter; Bis–Man Reel & Rec. Club, Inc.; Arthur C. Bauer; Victor Gibbins, Appellants,

v.

BURLEIGH COUNTY OF NORTH DAKOTA, a political subdivision of the State of North Dakota, Respondent and Appellee,

v.

DuWayne TERNES and Sharon Ternes, Intervenors.

Civ. No. 930184.

Supreme Court of North Dakota.

Jan. 10, 1994.

Saefke Law Office, Bismarck, for appellants; argued by Frederick E. Saefke, Jr.

Bruce B. Haskell (argued), Asst. State's Atty., Bismarck, for respondent and appellee.

MESCHKE, Justice.

The Burleigh County Water Resource District, two recreational organizations, and two interested individuals (collectively, the WRD) appeal a district court judgment affirming the Burleigh County board of commissioners refusal to take action for removal of an existing encroachment along a section line. We affirm.

DuWayne and Sharon Ternes purchased a home and later discovered it extended at

least seven feet into the public right of way along an open section line. *See* NDCC 24–07–03.[1] At a 1992 public meeting with the Terneses, the board "accept[ed] the existence of the obstruction" and declined to "take any action under Section 24–06–28" and related

1. NDCC 24–07–03 says:

 *Section lines considered public roads—Closing same under certain conditions.* In all townships in this state, outside the limits of incorporated cities, and outside platted townsites, additions, or subdivisions recorded pursuant to sections 40–50.1–01 through 40–50.1–17 or recorded prior to July 1, 1987, under former chapter 40–50, the congressional section lines are public roads, open to the width of thirty-three feet [10.06 meters] on each side of such section lines.

 The board of county commissioners, if petitioned by a person having an interest in the adjoining land or a portion thereof, is authorized, after public hearing and a finding by the commissioners of public benefit, to close section line roads or portions thereof which are not used for ten years, are not traveled due to natural obstacles or difficulty of terrain, are not required due to readily accessible alternate routes of travel, or are intersected by interstate highways causing such section line road to be a dead end, providing the closing of such dead end section line road does not deprive adjacent landowner access to his property. After such section line roads are closed, they may be leveled and farmed by the adjacent landowners or tenants, only if the leveling or farming does not disturb, remove, or destroy any survey or property reference monument. However, if drainage is interfered with due to the farming operations, alternate means of drainage must be provided for by the landowners or tenants farming such lands.

2. NDCC 24–06–28 now says:

 *Obstruction of section lines prohibited—Exception—Certain fences not considered obstructions—Penalty.*

 1. No person may place or cause to be placed any permanent obstruction, stones, trees, or rubbish within thirty-three feet [10.06 meters] of any section line, unless written permission is secured from the board of county commissioners or the board of township supervisors, as the case may be. The permission must be granted where the section line has been closed pursuant to section 24–07–03 or where the topography of the land along the section line is such that in the opinion of the board of county commissioners or board of township supervisors, as the case may be, the construction of a road on the section line is impracticable.

 2. Subsection 1 may not be construed to prohibit construction of fences:

 a. Along or across section lines which have been closed pursuant to section 24–07–03 or which have not been opened because construction of a road is impracticable due to the topography of the land along the section line, but such fences are subject to removal as provided in section 24–06–30.

 b. Across section lines which have not been closed pursuant to section 24–07–03 if cattle guards are provided in accordance with chapter 24–10 where fences cross the section lines.

 3. The construction of fences pursuant to subsection 2 may not be considered an obstruction of section lines and any person who damages any fence or who opens and fails to close any gate constructed under subsection 2 is guilty of an infraction.

NDCC 24–06–29 says:

 *Removal of obstructions when section lines opened—Cost.* If any person places or causes to be placed any stones, trees, or rubbish within thirty-three feet [10.06 meters] of any section line, the board of county commissioners or board of township supervisors, as the case may be, when a public highway is opened along the section line, shall notify the owners of adjacent property to remove the stones, trees, or rubbish. Written notice by registered mail to the record owner of the adjacent property mailed to the owner's last known address and to any other persons in possession of the property constitutes valid notice. If the owners fail to remove the stones, trees, or rubbish within thirty days after the notice is mailed, the board of county commissioners or the board of township supervisors, as the case may be, shall remove the stones, trees, or rubbish. The cost of removal must be entered the same as taxes against the adjacent property and paid in the same manner as taxes.

NDCC 24–06–30 says:

 *Removal of fences—Notice—Cost.* When a public highway is opened along any section line, the board of county commissioners or the board of township supervisors, as the case may be, shall notify the owner of adjacent property to remove any fences not constructed pursuant to subsection 2 of section 24–06–28 within thirty-three feet [10.06 meters] of the section line in the manner provided for notice to remove stones, trees, or rubbish. If the owner of adjacent property fails to remove the fences within thirty days after the notice is given, the board of county commissioners or the board of township supervisors, as the case may be, shall remove the fences. The cost of removal must be entered the same as taxes against the adjacent property and paid in the same manner as taxes.

statutes.[2] The WRD appealed this decision to the district court. The district court concluded the board did not erroneously exercise its discretion in "allowing the encroachment to remain ... as a matter of grace." The WRD appeals.

■ Any aggrieved person may appeal from the decision of county commissioners. NDCC 11–11–39. An aggrieved person is one who has more than a nominal, formal, or technical interest. *Washburn Public School District No. 4 v. State Board of Public School Education*, 338 N.W.2d 664, 667 (N.D. 1983). We held in *Huber v. Miller*:

> [T]he party must have some legal interest that may be enlarged or diminished by the decision to be appealed from. In other words, such party must be injuriously affected by the decision. . . .

101 N.W.2d 136, 140 (N.D.1960) (citations omitted). It is a close call in this case, but we conclude that the WRD's legal interests in a section line right of way are sufficiently affected for them to be aggrieved by the board's decision.

■ The appellants say that they are acting as members of the public. A person acting as a member of the public normally has only a generalized grievance and cannot appeal a board's decision. *Huber v. Miller*, 101 N.W.2d at 140 (location of farm-to-market road to be constructed by county). However, the right of passage on open section lines belongs to the public and cannot be alienated by the State, which holds the section lines as trustee for the public. *Saetz v. Heiser*, 240 N.W.2d 67, 72 (N.D.1976), *citing Small v. Burleigh County*, 225 N.W.2d 295, 298 (N.D.1974). In keeping with our preference for deciding disputes on their merits, we conclude that the WRD's specific interests in preserving the public's right in this narrow category affecting section line rights of way makes the appellants sufficiently aggrieved for judicial review.

■ In reviewing a decision by a local legislative body, a court must not substitute its judgment for that of the body, but rather must determine whether the body erroneously exercised its discretion. *Ennis v.*

*Williams County Board of Commissioners*, 493 N.W.2d 675, 679 (N.D.1992), relying upon *Shaw v. Burleigh County*, 286 N.W.2d 792, 796–97 (N.D.1979). We independently review the board's actions, and we apply the same standard of review as the district court to determine whether "the Board's action comports with a correct interpretation of the law and whether or not the Board has acted in an arbitrary, capricious, or unreasonable manner." *Conway v. Board of County Commissioners of Grand Forks County*, 349 N.W.2d 398, 400 (N.D.1984). We conclude that the board acted reasonably when it chose not to compel the Terneses to immediately move part of their home.

■ The WRD argues that NDCC 24–06–28 requires the board either to remove an unauthorized obstruction or to order the offending person to provide additional land to preserve the full width of the public's easement. They also argue that the board's decision arbitrarily and illegally deprives the public of the right to passage proclaimed in NDCC 24–07–03 for every open section line outside platted subdivisions. The WRD asks us to reverse the board's decision refusing to remove the encroachment, or to direct that legislative body to declare a public necessity and to condemn additional land for a full right of way around the obstruction. They seek this relief despite the facts that the board has not yet decided to improve the road on that part of the section line, and that the right of way is not impassable.

The board claims that it is not compelled by law to remove all unauthorized permanent obstructions. The board argues there is no need to acquire additional land at this time because the Terneses' home does not completely block the public's ability to travel on the section line. The board further argues that, even if a necessity exists, the decision to condemn land for a public road is left to its discretion.[3]

3. The board also asserts that it lacks the power to remove the Terneses' home from the section line. Even if the board has such a power, the decision to remove a permanent obstruction from a section line is not mandated by statute and would lie in the sound discretion of the board. *See Solen Public School Dist. No. 3 v. Heisler*, 381 N.W.2d 201, 203 (N.D.1986) ("Man-

datory and directory statutes each impose duties, and their difference lies in the consequence of the failure to perform the duty. The mandatory-directory dichotomy relates to whether the failure to perform a duty will invalidate subsequent proceedings."); *Syverson, Rath and Mehrer v. Peterson*, 495 N.W.2d 79 (N.D.1993). Absent a legal duty to act, we do not normally compel

Unless closed by board action, congressional section lines outside platted subdivisions are public roads, open to a width of thirty-three feet on each side. NDCC 24–07–03; *State v. Silseth*, 399 N.W.2d 868, 869 (N.D.1987). Obstruction of a public highway without written permission is prohibited, and may result in criminal liability. NDCC 24–12–02; *Silseth* at 869–70. The placement of permanent obstructions, stones, or rubbish on a section line easement, without permission from the county commissioners, is also prohibited. NDCC 24–06–28.[4] Still, not every obstruction jeopardizes the public's right of travel.

■ A landowner abutting an open section line retains ownership of the property within the easement, subject to the public's right to travel. *Small v. Burleigh County*, 225 N.W.2d at 297. *Compare Hjelle v. J.C. Snyder & Sons*, 133 N.W.2d 625, 629 (N.D.1965) (landowner retains ownership of property included in highway easement). The public's easement is limited to the right to travel, and does not include an absolute right to an object-free zone for the complete length and width of the section line. In *Hjelle*, we held that a highway right of way is not "obstructed" when a placement did not impede the public's right of passage. 133 N.W.2d at 630. We recently held that cattle guards or gateways do not have to be sixty-six feet wide to comply with NDCC 24–07–03, when approved by the board. *Ames v. Rose Township Board of Township Supervisors*, 502 N.W.2d 845, 850 (N.D.1993). Only when an obstruction effectively deprives the public of the ability to travel on an open section line is their right to travel violated.

■ The WRD argues that NDCC 24–06–28 requires the board to remove all permanent obstructions regardless of their impact on the public's right to travel. This argument has some support in the Century Code. County and township boards have power either to order a landowner to remove rubbish,

stones, trees, or fences placed in the easement, or to remove them at the landowner's expense. NDCC 24–06–29, 24–06–30. Inexplicably, these directions do not expressly compel removal of a permanent obstruction like a building. Still, it is clear that "the Legislature has the power, within reasonable limits, to define what constitutes interference with the public's easement." *State v. Silseth*, 399 N.W.2d at 870. For whatever reason, the Legislature has not directed the board to remove permanent obstructions, as it has for rubbish, stones, trees and fences.

The construction of NDCC 24–06–28 suggested by the WRD would render meaningless the powers of county commissioners under NDCC 24–06–29 and 24–06–30 to remove rubbish, stones, trees, and fences, and to tax the costs against the property. We must give effect to all of these statutes and attempt to harmonize their meaning and application. *Ebach v. Ralston*, 469 N.W.2d 801, 804 (N.D.1991). Therefore, we conclude that 24–06–28 does not mandate that the board remove permanent obstructions.

Our interpretation of NDCC 24–06–28 does not permit the board to indiscriminately approve all permanent obstructions. We held in *Small* that the public cannot be deprived of use of the right of way along section lines that remain open. For like reasons, the board cannot arbitrarily approve an encroachment that prevents the public from travelling on an open section line that is free of natural obstacles. This record does not reflect that the partial encroachment in this case completely blocks the public from using this section line.

The board's power under the statutes to remove all prohibited placements is unaffected by our decision. The State also retains the right under NDCC 24–12–02 to prosecute anyone who obstructs "any public highway in any manner" or "[w]illfully ... obstruct[s] ... any public highway or right of way."

---

legislative bodies to perform discretionary acts. *See Shaw v. Burleigh County*, 286 N.W.2d at 795 (court can only determine whether legislative body exceeded authority). Therefore, we need not decide this question. *See Maragos v. Norwest Bank*, 507 N.W.2d 562 (N.D.1993) (unnecessary questions not decided on appeal).

4. 1993 amendments to NDCC 24–06–28 prohibit the placement of trees in the easement as well, and delete the requirement that permission be "first" secured before placement of an obstruction. *See* 1993 N.D.Laws, ch. 277, § 1.

The power of public authorities to respond to encroachments is not limited to instances where the public right to travel is completely deprived.

 A board of county commissioners does not erroneously exercise its discretion when its decision is the result of a rational mental process. *Ames v. Rose Township Board of Township Supervisors,* 502 N.W.2d at 851. The board's decision here achieves "a reasonable balance ... between the public's right to travel and the rights of those who have an interest in the land" subject to the easement. *Ames* at 850. We conclude that the board did not act arbitrarily, capriciously, or unreasonably in balancing the competing interests in this case.

The board has no immediate legal duty to move the Terneses' home, and did not erroneously exercise its discretion by tolerating this encroachment. We affirm.

SANDSTROM, Acting C.J., and LEVINE and NEUMANN, JJ., and JOHN T. PAULSON, District Judge, concur.

PAULSON, JOHN T., District Judge, sitting in place of VANDE WALLE, GERALD W., C.J., disqualified.